See also 319 S.W.2d 820.

M. T. SHAW et al., Appellants,

v.

ALLIED FINANCE COMPANY, Appellee.

No. 15513.

Court of Civil Appeals of Texas.

Dallas.

Oct. 23, 1959.

Rehearing Denied Dec. 11, 1959.

Walker, Day & Harris and Don E. Burdette, Fort Worth, for appellants.

Locke, Purnell, Boren, Laney & Neely and J. L. Shook, Dallas, for appellee.

DIXON, Chief Justice.

This appeal presents a question of venue.

Appellee Allied Finance Company brought suit in Dallas County, Texas, against Marvin W. Parker on a note and mortgage, both of which instruments are by their express terms made payable in Dallas County, Texas. M. T. Shaw was joined as a party defendant, it being alleged that he claims an interest of some kind in the automobile against which foreclosure is sought by appellee, Allied Finance Company.

Shaw filed a plea of privilege seeking to have the cause of action against him transferred to Tarrant County, Texas, where he resides. He has appealed from an order overruling his plea.

Appellee's amended petition states that Marvin W. Parker cannot be located but alleges on information and belief that he is now in the Republic of Cuba. The petition then set out a cause of action against Parker on the past due note and mortgage executed by Parker payable in Dallas County. Service of citation was obtained on Parker under Rule 106, Vernon's Ann.Texas Rules.

■ The nature of appellee's claim as to appellant Shaw is set out in appellee's petition as follows: "That heretofore on or about the 14th day of March, 1958, Plaintiff filed this suit by filing its Original Petition, and at the same time filing Affidavit for Sequestration and a Sequestration Bond, * * * that the Writ of Sequestration was delivered by Plaintiff to the Sheriff of Wise County, Texas, on March 14, 1958, and at the same time Citation was served on M. T. Shaw the Sheriff of Wise County made demand on the said M. T. Shaw for the automobile described in such Writ and herein as being a 1958 Cadillac Sedan DeVille, Motor No. 58L017222, of the value of Five Thousand Dollars ($5,000.00); that the said M. T. Shaw stated to such Sheriff and in the presence of numerous witnesses, including employees of the Plaintiff, and a Highway Patrolman, A. W. Elliott, who resides in Decatur, that he had possession of the automobile, and that he refused to deliver such automobile to the Sheriff or anyone else; that he had no intention of surrendering possession to the Plaintiff or the Officers of this Court or anyone else; * * * M. T. Shaw has no title to the motor vehicle and has no right to hold same against this Plaintiff, the owner of a valid first lien, noted on the only valid Certificate of Title outstanding on said motor vehicle. * * * The said Marvin W. Parker attempted to sell such vehicle to various persons unknown to Plaintiff, and finally delivered such automobile to the Defendant M. T. Shaw of Hurst, Texas, under some agreement, the nature and extent unknown to plaintiff, but which in any event could not affect Plaintiff's first valid and subsisting lien and which could not confer on M. T. Shaw any rights equal to or superior to the rights of Allied Finance Company under its first, valid and subsisting lien noted on the Motor Vehicle Certificate of Title; that said automobile has on occasion been removed from the State of Texas, and carried to the State of California, where an attempt has been made to sell same to various automobile dealers, and also likewise into the State of Nevada, in Reno and Las Vegas, where attempts were made to sell such motor vehicle; that Allied Finance Company has used all diligence to locate such vehicle and has expended the sum of $300.00 in an attempt to locate and repossess such vehicle and M. T. Shaw, because he did not have either the Manufacturer's Certificate or a valid State Certificate of Title or for some other reason has been unable to dispose of such automobile, and same is now located in the State of Texas, either in or around Hurst, Texas, and Plaintiff is entitled to have the officers of this Court take possession of such automobile under the Writ of Sequestration to be issued herein and to hold same, subject to the further orders of this Court; * * *".

The evidence as to appellee's claim is uncontradicted. On January 3, 1958, Marvin W. Parker executed a note and mortgage in the amount of $5,726.16 to appellee Allied Finance Company to finance his purchase of a Cadillac automobile. The transaction took place at appellee's office in Irving, Texas. Parker held a license as an automobile dealer. On the occasion in question he drove the car to the loan company's office and presented a manufacturer's certificate of origin from the Cadillac Motor Car Division of General Motors Corporation. Parker is the last named assignee in said certificate.

The car itself bore license plates of the State of Alabama. This occasioned no concern to the loan company's manager, for he was aware that Alabama is not a title State—that is, it does not have a title certificate law such as is in effect in Texas and most States. All that is necessary in Alabama is for a car owner to register his car and receive a tax certificate. Parker explained that when he bought the car it was carrying Alabama plates, and he had merely left them on the car until he could get his Texas license plates.

Parker surrendered his manufacturer's certificate of origin to appellee loan company and signed an application for a title certificate as required by Texas law. The loan company manager together with a used car dealer named Valentine checked the automobile and found that the motor number shown on a piece of plastic material riveted to the automobile door post was the same as the motor number shown on the manufacturer's certificate. The loan company then sent the manufacturer's certificate and Parker's application for a title certificate to the Tax Collector of Dallas County. The Tax Collector issued his receipt and the papers were forwarded to Austin, Texas, for the issuance of a title certificate. In due time the State Highway Department forwarded a title certificate dated January 3, 1958, showing that Marvin W. Parker is the owner of the car, and that

Allied Finance Company is the owner of a mortgage against it for $5,726.16. This procedure was in compliance with the requirements of the Texas Certificate of Title Act, Art. 1436–1, Vernon's Penal Code of Texas.

On the manufacturer's certificate which Marvin W. Parker surrendered to the loan company he is shown as the assignee in a third endorsement, having received the certificate from the second assignee Phillip McCray, whose signature is shown in the third endorsement as the assignor of the instrument to Parker. The name of Loran W. May is shown on the third endorsement as a notary public before whom the acknowledgment of Phillip McCray was taken. At the hearing on the plea of privilege Loran W. May testified that the signature is not his, and that he had not acted as a notary public. His testimony is uncontradicted that his purported signature as a notary is a forgery.

However the genuineness of the signature of Phillip McCray as assignor is not attacked. It was not the assignment itself which was forged; the forgery under the evidence before us was of the notary's signature only.

Marvin W. Parker made no payments on his note and mortgage. Appellee's efforts to contact him in regard to his past due payments were unsuccessful. It developed that soon after he had obtained his loan from appellee, he sold his home in Irving, Texas, and departed for parts unknown. Appellee filed suit against Parker and Shaw.

Appellee also sued out a writ of sequestration against Shaw, who at first claimed he did not know where the car could be found. Contempt proceedings were then instituted against Shaw. The location of the car was disclosed. The Sheriff of Tarrant County took possession of the car under a writ of sequestration. The contempt proceedings against Shaw were dismissed.

Later a receiver, duly appointed by the trial court, after extended efforts took possession of the car and, so far as the record shows, the car is still in the receiver's possession in Fort Worth, Texas. Appellant Shaw gave notice of appeal from the order appointing a receiver and executed a $500 appeal bond. However, so far as the record shows he did not further prosecute said appeal.

The evidence pertaining to Shaw's claim is also undisputed. Marvin W. Parker contacted Shaw and effected a purported sale of the car to Shaw. Parker did not endorse his manufacturer's certificate to Shaw, or surrender the certificate itself to Shaw. As evidence of the transfer of ownership to Shaw, Parker merely executed a bill of sale which he dated December 13, 1957. He also surrendered to Shaw a bill of sale by which he supposedly had acquired title to the car from Joe B. Lowry on December 10, 1957, in Livingston, Alabama. On this bill of sale from Joe B. Lowry to Parker the name of Loran B. May appears as a notary public who took Lowry's acknowledgment to the instrument.

Joe B. Lowry testified at the hearing on appellant's plea of privilege. He is Parker's first cousin. He lives in Irving, Texas. He testified that the signature on the bill of sale to Parker is not his signature. He did not sell the car to Parker. He never owned the automobile in question. He has never been in Livingston, Alabama.

Loran W. May also testified. He stated that the notary's purported signature on the forged bill of sale from Joe B. Lowry to Parker is not his signature. He never acted as notary in connection with the alleged sale of the car to Parker.

Under the uncontradicted evidence before us Shaw's interest in the car, whatever it may be, is based on a forged instrument, namely, the forged bill of sale from Lowry to Parker.

On February 12, 1958, Shaw undertook to transfer title to the car to R. V. Stegall of Fort Worth, Texas, also an automobile dealer. This purported transfer of title was effected simply by a bill of sale from Shaw to Stegall. Shaw's signature was notarized by O. H. Stegall, an automobile salesman and a brother of R. V. Stegall.

On February 28, 1958, for reasons which are not explained, R. V. Stegall applied for a title certificate on the car from the State of Oklahoma. A certificate dated February 28, 1958, was issued to Stegall by the Oklahoma Tax Commission. At that time R. V. Stegall resided in Fort Worth, as both his application and his Oklahoma title certificate expressly recite. There is no evidence that the car was ever in the State of Oklahoma. O. H. Stegall, the notary public, testified that his brother, R. V. Stegall, had possession of the car in Fort Worth when he purchased it from appellant Shaw. At the time R. V. Stegall obtained the Oklahoma certificate of title, a Texas certificate of title had already been issued showing appellee as holder of a mortgage.

## Opinion

At our invitation both appellant and appellee filed supplemental briefs in regard to the legal effect of the forged notary's signature on the third endorsement of the manufacturer's certificate of origin, and the forged signatures of both the seller and the notary on the bill of sale from Joe B. Lowry to Parker.

As we have already stated no attack has been made on the genuineness of the signature of McCray, the assignor in the third endorsement of the manufacturer's certificate. Only the notary's signature has been attacked. Appellee points out that Art. 1436–1 of our Vernon's Ann. Penal Code does not require the endorsement to be notarized. It is appellee's contention that under the circumstances the defective acknowledgment does not invalidate the assignment itself. In support of this view we are referred to 1 Tex.Jur. 371–372, 376 and cases there cited.

On the other hand if the signature of Joe B. Lowry on the bill of sale from Lowry to Parker was forged, and the uncontradicted testimony is that the signature was forged, then the bill of sale is a nullity; and Parker's bill of sale to Shaw and Shaw's bill of sale to Stegall are also nullities.

However, we have concluded that the legal effect of these false signatures is a matter to be adjudicated at a trial on the merits, not on this appeal which is concerned only with the venue question. Therefore we shall forego all further discussion of the legal effect of the forgeries.

Since the note and mortgage signed by Parker are by their express terms payable in Dallas County, venue as to Parker lies in Dallas County. Appellee says that venue also may be maintained in Dallas County against Shaw under Art. 1995, Subd. 29a.

Appellant takes the contrary view and has briefed one point on appeal. He says that in order to bring its suit within the terms of Art. 1995, Subd. 29a, appellee has the burden of showing that appellant is a necessary party, and that appellee has failed to discharge its burden. In support of this contention appellant has cited cases holding that a senior and prior lien holder is not a necessary party to a foreclosure suit by a junior lien holder, nor is it necessary to litigate adverse claims of title in a foreclosure suit. Among the cases cited by appellant are Stephenville Production Credit Association v. Drake, Tex.Civ.App., 226 S.W.2d 888 and Linder v. Thomas, Tex. Civ.App., 228 S.W.2d 300.

We do not take issue with the holdings in the cases cited by appellant, but we are of the opinion that the holdings in those cases are not controlling in the situation presented by the pleadings and the evidence in this appeal.

The meaning of the term "necessary party" as used in Art. 1995, Subd. 29a, has been the subject of judicial decisions which are not always consistent with each other. McDonald in his "Texas Civil Practice",

Sec. 4.36 looks at the lack of uniformity in the decisions.

Appellant in his brief says that he has not disclaimed an interest in the automobile in question, but that appellee has not proved that he is claiming any interest.

While the record before us leaves some doubt as to the exact nature of the interest which appellant asserts, it leaves no doubt that (1) he is claiming an interest of some kind, and (2) that he asserts an interest which is adverse and hostile to appellee's claim of a valid mortgage, and its right to foreclose the mortgage. We believe that appellee cannot get the complete and adequate relief to which it is entitled unless. Shaw is a party to the suit.

In the case of Pioneer Building & Loan Ass'n v. Gray, 132 Tex. 509, 125 S.W.2d 284, 287 (Comm. of Appeals, opinion adopted by Supreme Court), the facts differed in several respects from the facts in the case presently before us. Nevertheless we think the rule announced by Commissioner Hickman, now the Chief Justice of our Supreme Court, is applicable to the situation here. We quote from the opinion: "In the case at bar the plaintiff had the absolute right, as against the mortgagors, under subdivision 5 of Article 1995, to maintain a suit upon its note and to foreclose its lien in McLennan county. In order to secure that right and make fully effective a decree of foreclosure, Gray was a necessary party. * * * Only by abandoning some of the substantial rights granted it by that subdivision [Subd. 5] could it avail itself of the benefits of subdivision 29a, if that subdivision is to be given the narrow construction insisted upon by appellee. We do not ascribe to the Legislature an intention to enact a statute of such limited operation. Rather, we think it was clearly its intention to preserve to a plaintiff every substantial right given him under all of the other subdivisions of Article 1995 by permitting him to join as parties defendant all persons necessary to the enforcement of his full cause of action. The very language of subdivision 29a compels.

that construction. * * * The clear meaning of that language is that a plaintiff may maintain against all necessary parties the same suit which he may maintain under any other exception of Article 1995 against any one party, and every party whose joinder in the suit is necessary to the securing of full relief in 'such suit' is a necessary party in the sense that term was used in subdivision 29a."

Other cases which we believe lend support to our holding that under Art. 1995, Subd. 29a, Shaw is a necessary party in the light of the pleadings and the evidence in this case are: First National Bank in Pleasanton v. Southwestern Investment Co., Tex.Civ.App., 301 S.W.2d 192; Snider v. Associates Investment Co., Tex.Civ.App., 301 S.W.2d 699; Medford v. First National Bank of Evant, Tex.Civ.App., 212 S.W.2d 485; Liegl v. Trinity Finance Corp., Tex.Civ.App., 211 S.W.2d 318 and Ulmer v. Dunigan Tool & Supply Co., Tex.Civ.App., 163 S.W.2d 901.

Appellant's point on appeal is overruled.

The judgment of the trial court is affirmed.

## On Motion for Rehearing

In his motion for rehearing appellant says that we misstated the record when we said "Appellee's efforts to contact him in regard to his past due payments were unsuccessful".

W. L. Hillhouse, appellee's District Manager, testified that nothing has been paid on the note.

Robert Eugene Jones, at the time employed in appellee's Irving office, testified that when the loan was made Parker told him he, Parker, was living at 1338 Owens Drive, Irving, Texas, which is in Dallas County, Texas. As appellee himself points out in his brief there is no evidence in the record that Marvin W. Parker resided in Dallas County at the time suit was filed or at any time thereafter.

Jones further testified as follows:

"Q. (By Mr. Shook) When did you leave the Irving office and transfer to Beaumont? A. On the 1st day of March.

"Q. Was this contract here, Exhibit No. 1 or No. 2, the note and mortgage, was it already in default at the time you left? A. Oh, yes, sir, it was.

"Q. Were you or not in on the beginning of trying to find the automobile and the matters that led up to this lawsuit? A. That is correct.

"Q. Did you have any personal contact with Mr. Parker at that time? A. I did not.

"Q. Do you know that at the time that you left that the note was in default, that no payments had been made on it? A. That is correct."

Donald Richard Owen testified that he bought the property known as 1338 Owens Drive, Irving, Texas, and moved into it as his residence on March 8, 1958. At the time he bought the property it was vacant. He dealt with Mrs. Parker in the negotiations leading up to the purchase. She told him that Parker had moved to Fort Worth, Texas. The witness further testified that he was personally acquainted with Parker but had not seen him in a long time.

Service of citation was never obtained on Parker personally. The Sheriff of Tarrant County, Texas, made his return showing that service was obtained by "serving J. F. Crites, a person over the age of 16 years living at Mr. Parker's place of abode, under Rule 106". Such a method of service of citation is permissible only when it is impractical to secure personal service on the party to be served.

In our opinion the uncontradicted evidence supports the statement which appellant challenges.

The motion for rehearing is overruled.